UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-47-GWU

EUGENE GILLIAM, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

07-47 Gilliam

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-47  Gilliam

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In

such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Eugene Gilliam, a 61-year-old man with an eighth grade education and work experience as a fire ranger and forest fire fighter, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments consisting of hypertension, mild developmental lumbar spinal stenosis and a small central lumbar disc protrusion.  (Tr. 15).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Gilliam retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-19).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were restricted to the full range of medium level exertion.  (Tr. 194-5).  The VE responded

07-47  Gilliam

that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 195).[1]

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Gilliam alleged disability commencing July 30, 2004 due to back and leg problems, high blood pressure, and high cholesterol. (Tr. 64-5). He testified that his "back wore out," and he was unable to perform his duties as county forest ranger because he was in constant pain. (Tr. 182, 184). He had taken retirement, but would have continued working if he were able to do so. (Tr. 184). His back would go out completely if he was on his feet for 20 minutes, and if he was not close to something, would usually "hit the floor." (Tr. 185). He took the medication Lortab from his treating physician, Dr. Mahboob, but did not use a TENS unit or a cane. (Id.). Dr. Mahboob had not referred him to a specialist, and no physician had discussed surgery. (Tr. 186). Mr. Gilliam also described difficulty using his hands due to arthritis, and stated that he needed to walk on the side of his feet due to foot pain, but he had never had x-rays, and did not really know what was wrong. (Tr.

---

[1] The VE additionally testified that the plaintiff would be able to do the job of fire ranger as it was described in the <u>Dictionary of Occupational Titles</u> (DOT), but he did not know of any jobs actually performed in the economy that would fit the DOT description. (Tr. 195-6). The ALJ found that the plaintiff was not capable of performing any of his past relevant work, thus shifting the burden to the defendant. (Tr. 17).

187-8). He was on medication for cholesterol, high blood pressure, and allergies. (Tr. 188).

The only evidence from an examining medical source comes from Dr. Neeraj Mahboob. Mr. Gilliam first saw the physician in April, 2004 with complaints of low back pain, which he had had "on and off for years." (Tr. 121). Dr. Mahboob also noted high blood pressure. His physical examination showed limited lumbar range of motion with right paraspinal tenderness, but there was no sensory or motor deficit and Romberg testing was negative. (Id.).[2] Dr. Mahboob obtained a lumbrosacral spine x-ray showing mild hypertropic spurring of the vertebral bodies and partial lumbarization of S1. (Tr. 125). Subsequently, the physician obtained an MRI of the lumbrosacral spine, which showed straightening of the normal lumbar lordosis, "mild" developmental stenosis involving the lower lumbar segments, a rudimentary disc at S1-2, and some disc space narrowing at L3-4. (Tr. 124). There was no significant stenosis at that level, however, and there was no focal disc herniation. (Id.). Dr. Mahboob did not change his diagnosis of low back pain, and noted that the plaintiff stated that the medications were helpful and he had a good range of motion with no radicular symptoms. (Tr. 113).

---

[2] In Romberg testing, the patient is asked to "stand with feet together, eyes closed, and arms outstretched without losing balance." Professional Guide to Diseases, (Helen Klusek Hamilton, ed., 1987), p. 567.

07-47  Gilliam

The plaintiff did complain of arthritis acting up in his hands and knees by April, 2005, but the physician made no specific findings and diagnosed only generalized osteoarthritis. (Tr. 156). Later in 2005, Mr. Gilliam's medication dosage was increased, and he stated that he was doing much better. (Tr. 149). The most recent office note from January, 2006 shows that Mr. Gilliam was doing "fine" since his last visit, was tolerating his medications well without any side effects, and had a "good" range of motion. (Tr. 147). The most recent office notes also indicate that his blood pressure was under control with medication.

State agency physicians who reviewed a portion of the record, including the MRI, concluded that Mr. Gilliam would be capable of medium level exertion, consistent with the ALJ's conclusions. (Tr. 127-34, 136-43).

Subsequently, on October 16, 2005, Dr. Mahboob submitted a "Physical Capacities Evaluation" in which he stated that the plaintiff could never lift even ten pounds, could sit, stand, and walk less than one hour per day each, could not use his hands for repetitive grasping, pushing, pulling, or fine manipulations or use his feet for repetitive movements, would have no ability to perform any postural activities, and would have a "total" restriction on activities involving unprotected heights, moving machinery, exposure to marked changes in temperature and humidity, and driving automotive equipment. (Tr. 160). He added that there would be a "moderate" restriction on exposure to dust, fumes, and gases. Apparently, the

ALJ asked for additional information and in an undated letter received May 5, 2006, Dr. Mahboob wrote only that the plaintiff had been diagnosed with low back pain and muscle spasms and he was unable to sit or stand for longer than 20 minutes at a time.  (Tr. 162).

The ALJ declined to accept Dr. Mahboob's restrictions, citing several factors. He noted the fact that Dr. Mahboob's physical examinations were frequently completely negative, that the MRI showed fairly mild changes, that the plaintiff reported a good response to medication, and that he was never referred for any other treatment such as physical therapy or a neurosurgical evaluation.  (Tr. 16). The ALJ correctly noted that the limitations concerning the use of Mr. Gilliam's hands and feet were not supported by any objective findings or testing.  (Id.).

The plaintiff objects to the rejection of the treating physician opinion on appeal, and assets that the treating physician opinion and the testimony were completely ignored.  Clearly, however, the ALJ devoted considerable space in his discussion to both the testimony and the treating physician opinion.  (Tr. 13-16). Moreover, even the opinion of a treating physician is not entitled to controlling weight where it is not supported by sufficient medical evidence.  It is reasonable for a fact-finder to question the conclusions of a physician who notes no physical limitations on recent examinations, and proceeds to indicate that his patient is essentially unable to perform any activity.  While the state agency physicians upon

07-47  Gilliam

whom the ALJ relied did not have the benefit of a review of all the evidence, the ALJ could reasonably have rejected Dr. Mahboob's opinion given the extreme disparity between the treating physician's findings and his assessed limitations, combined with his failure to provide more information in response to inquiry.  Moreover, although additional office notes from Dr. Mahboob were submitted after the state agency sources rendered their opinions, they did not contain any new findings.

Counsel for the plaintiff also charges that the ALJ did not consider the combined effects of all the plaintiff's impairments, but no functional restrictions related to his high cholesterol were shown, his blood pressure was controlled with proper medication, and a restriction related to his problems with allergies would appear to be inappropriate given his continued cigarette smoking.  (Tr. 189).  See Mullins v. Secretary of Health and Human Services,  836 F.2d 980, 985  (6th Cir. 1987).

The decision will be affirmed.

This the 30th day of November, 2007.



Signed By:

G. Wix Unthank

United States Senior Judge

12